UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **EVANSTON INSURANCE COMPANY,**<br>       Plaintiff,<br><br>v.<br><br>**LISA BRADY,** *et al.***,**<br>       Defendants. | Case No. 4:23-cv-106-CLM |

## MEMORANDUM OPINION

Inmate Trenton Gartman successfully sued healthcare provider QCHC, Inc. ("QCHC") and some individual caregivers, including Lisa Brady ("Brady"), for heart problems he suffered while in the Autauga County jail. This case is about who pays Gartman's attorney's fees: QCHC's insurer or Brady.

A policy issued to QCHC by Evanston Insurance Company ("Evanston") covered Gartman's lawsuit. Under the policy, Evanston has paid Gartman's compensatory and punitive damage awards. Evanston filed this lawsuit under 28 U.S.C. § 2201, seeking a declaration that the Policy does not require it to also pay Gartman's attorney's fees on behalf of Brady. (Doc. 1). In response, Brady counterclaimed against Evanston, (doc. 7), and a third-party complaint against QCHC, (doc. 10; doc. 29). Evanston and QCHC move to dismiss those complaints for failure to state claims under Federal Rule of Civil Procedure 12(b)(6).

As explained below, the court **DENIES** Evanston's Motion to Dismiss Count I and Count III of Brady's counterclaims and **GRANTS** Evanston's Motion to Dismiss Count II of Brady's counterclaims. Because Brady cannot plead facts that would establish bad faith refusal, the court will dismiss Count II with prejudice. The court **GRANTS** QCHC's Motion to Dismiss both counts of Brady's Amended Third-Party Complaint, (doc. 40), but because it may be possible to sufficiently plead both counts, the court will dismiss Count I and

Count II without prejudice. The court will allow Brady to amend her Complaint on or before **March 25, 2024**.

## BACKGROUND

Because Brady is the non-moving party, the court takes these facts from Brady's complaints and assumes all alleged facts are true. Fed. R. Civ. P. 12(b)(6); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (at the motion-to-dismiss stage, "the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true").

### A. Gartman's lawsuit

QCHC contracted with the Autauga County Sheriff to provide healthcare to Autauga County inmates. (Doc. 29, ¶ 4). Brady worked for QCHC as a nurse in the Autauga County jail. In May 2018, inmate Gartman sued QCHC, Brady, and others under 42 U.S.C § 1983, alleging deliberate indifference to his medical needs. *See Gartman v. Brady, et al.*, ALMD Civil Action No. 2:18-cv-534-MHT ("the Underlying Action").

### B. The Policy

Evanston covered QCHC and employees like Brady against such lawsuits. The Policy's Insuring Agreement provides:

INSURING AGREEMENT
- A. Professional Liability and Claims Made Clause: The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of a Claim . . . for Professional Personal Injury:
  1. By reason of any act, error or omission in Professional Services arising out of the conduct of the Insured's Professional Services rendered or that should have been rendered by an Insured;

. . . .

(Doc. 1-1 (Form MESM 5010 08 15) at 15)). Relevant Definitions include:

> B. Claim means the Insured's receipt of:
>> 1. A written demand for Damages or Professional Services; or
>> 2. The service of suit or institution of arbitration proceedings against the Insured seeking Damages.
>
> C. Claim Expenses means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this Coverage Part, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include:
>> 1. Salary, wages, overhead, or benefit expenses of or associated with Employees or officials of the Named Insured or employees or officials of the Company; or
>> 2. Salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.
>
> D. Damages means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include:
>> 1. Punitive or exemplary damages or multiplied portions of damages in excess of actual damages, including trebling of damages;
>> 2. Taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law;
>> 3. Sanctions;
>> 4. Matters which are uninsurable under the law pursuant to which this Coverage Part shall be construed;
>> 5. The return, withdrawal, reduction or restitution or payment of fees, profits or charges for services or consideration and/or any expenses paid to the Insured; or

3

>6. The cost of complying with an award or order for declaratory, equitable or injunctive relief or remedy.

(Doc. 1-1 (Form MESM 5010 08 15) at 16)) (highlighting added). The court highlights the exclusion of "attorney's fees of a party other than an Insured" as covered "Damages" because this case, at its core, asks the court to determine whether Evanston must pay Gartman's attorney's fees.

### C. Evanston's Declaratory Judgment Action

Attorney's fees are relevant because a jury found Brady guilty of deliberate indifference and awarded Gartman compensatory and punitive damages. (Doc. 1, ¶ 10). The district court then awarded Gartman his attorney's fee of $143,552 and legal expenses of $19,716.25. (Doc. 1, ¶ 11). Evanston paid the compensatory and punitive damages (Doc. 1, ¶ 12), and filed this lawsuit seeking a judicial determination of its obligation to cover Brady's liability for Gartman's attorney's fees. (Doc. 1).

### D. Brady's Counterclaim against Evanston

Brady responded (in part) by filing a three-count Counterclaim against Evanston. (Doc. 7). Brady claims Evanston breached the enhanced obligation of good faith owed to Brady (Count I) because (1) Evanston failed to tell Brady or her attorney about policy exclusions or that they undertook the defense of Brady under a reservation of rights; and (2) Evanston failed to consult Brady before offers on her behalf were extended or before offers of settlement from the plaintiff were rejected. (Doc. 7, ¶ 17). Brady thus argues that she was not given an opportunity (1) to demand settlement by Evanston within policy limits; (2) to offer some amount from her personal resources to settle the case; or (3) to retain an attorney of her own choosing. (Doc. 7, ¶ 17). Brady also argues that Evanston, having undertaken the defense of Brady without properly reserving its purported non-coverage rights, cannot deny coverage for the attorneys' fees and costs for which a judgment has been issued against Brady, so Evanston's refusal to cover and pay the attorneys' fees and costs was a breach of the insurance contract, and Evanston intentionally failed to

4

determine whether there was a legitimate or arguable reason to deny coverage (Count II). (Doc. 7, ¶ 19). Brady's last count (Count III) states:

> Evanston had a duty to disclose to Brady the coverage exclusions in the policy when they undertook her defense under the contract of insurance Evanston concealed or failed to disclose the existence of these coverage exclusions, which induced Brady to allow Evanston to take control of her defense by choosing an attorney for Brady and making and rejecting offers of settlement on Brady's behalf without consulting Brady [(Count III)].

(Doc. 7, ¶ 20).

### E. Brady's Third-Party Complaint against QCHC

Brady also sued QCHC in a (now amended) third-party complaint, based on QCHC's alleged failure to tell Brady about Evanston's reservation of rights.

On June 4, 2018, Evanston sent a reservation of rights letter to QCHC's Birmingham office. The letter was addressed to QCHC's Chief Financial Officer Dr. Johnny Bates, QCHC's legal counsel Christie Estes, Brady, and one other individual party to the lawsuit. (Doc. 29, ¶ 7). The letter allegedly set out certain exclusions to the "damages" covered under the policy, which included an exclusion for "exemplary damages" and "[t]axes, criminal or civil fines, attorneys' fees of a party other than an Insured" and stated that it reserved the right to deny coverage for the listed policy exclusions. (*See* Doc. 29).

Brady alleges that she never received a copy of the letter until the jury found her liable to Gartman. (Doc. 29, ¶ 11). Brady further alleges that Evanston allowed QCHC to select counsel for all defendants without any input from Brady. (Doc. 29, ¶ 9). QCHC chose attorney LaBella Alvis ("Alvis"). (Doc. 29).

The parties engaged in pretrial mediation. Alvis represented all defendants at the mediation. (Doc. 29, ¶ 12). Brady alleges that Alvis told Brady that she could attend the mediation, but she was not required to attend. (Doc. 29). The mediation did not succeed, (doc. 29), and as recounted, Gartman

won a verdict against Brady for compensatory damages, punitive damages, and attorney's fees.

Based on these facts, Brady claims fraud (Count I) and negligence/wantonness (Count II) against QCHC related to the reservation of rights letter Evanston sent QCHC. (*See generally* Doc. 29). Brady alleges that she was not allowed to select her own attorney and was not given a copy of the reservation of rights letter. (Doc. 29, ¶¶ 9, 11). She also claims that she was not told about the authority Evanston gave Alvis to offer at mediation before the mediation; that no one told Brady about the offers and counteroffers exchanged during the mediation; and, that no one consulted her about the settlement offers submitted on her behalf. (Doc. 29, ¶¶ 12- 13). Brady also alleges that she was not notified of the Policy's exclusions until one week before the pretrial hearing, when Alvis told her that punitive damages were not covered. And Brady says she was never told that attorney's fees were uncovered until after the trial. (Doc. 29, ¶ 11).

## STANDARDS OF REVIEW

1. <u>General Rule 8 standard</u>: A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations," but does demand more than "an unadorned, 'the-defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* Rule 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. A complaint states a facially plausible claim for relief when the plaintiff pleads facts that permit a reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

2. <u>Heightened Rule 9 standard</u>: Fraud-based claims must also satisfy Rule 9(b)'s heightened pleading standard, by "stat[ing] with particularity the

circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To meet that standard, the complaint must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citations and quotation marks omitted).

## DISCUSSION

### A. Evanston's Motion to Dismiss Brady's Counterclaim

To begin, Evanston argues that Brady's counterclaim should be dismissed as a "shotgun pleading" for two reasons: (1) it's vague and conclusory and (2) it lumped two causes of action together. Having reviewed the Complaint, the court does not find that Brady's Complaint amounts to a shotgun pleading. *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 650 n.22 (11th Cir.2010) (Tjoflat, J., concurring in the appeal, No. 07–13225, and dissenting in the cross-appeal, No. 07–13477) ("a typical 'shotgun' pleading" where "each count incorporated by reference all preceding paragraphs and counts of the complaint notwithstanding that many of the facts alleged were not material to the claim, or cause of action, appearing in a count's heading"). So the court will review Evanston's count-specific arguments.

Evanston moves to dismiss each count asserted in Brady's Counterclaim for failure to state a claim under Rule 12(b)(6) and failure to plead fraud-based claims with particularity as required by Rule 9(b). *See* FED. R. CIV. P. 12(b)(6); FED. R. CIV. P. 9(b). The court addresses each count in turn.

1. **Count I: Breach of Enhanced Duty of Good Faith.**

7

1. State law: Under Alabama law, an enhanced obligation of good faith arises when an insurer defends an insured under a reservation of rights and requires the insurer to take the following steps to protect the insured:

> First, the company must thoroughly investigate the cause of the insured's accident and the nature and severity of the plaintiff's injuries. Second, it must retain competent defense counsel for the insured. Both retained defense counsel and the insurer must understand that only the insured is the client. Third, the company has the responsibility for fully informing the insured not only of the reservation-of-rights defense itself, but of all developments relevant to his policy coverage and the progress of this lawsuit. Information regarding progress of the lawsuit includes disclosure of all settlement offers made by the company. Finally, an insurance company must refrain from engaging in any action which would demonstrate a greater concern for the insurer's monetary interest than the insured's financial risk.

*See L & S Roofing Supply Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 521 So.2d 1298, 1303 (Ala. 1987) (quoting *Tank v. State Farm Fire & Cas. Co.,* 715 P.2d 1133, 1137 (Wash. 1986)).

The Supreme Court of Alabama has explained that a claim for breach of the enhanced obligation of good faith is a contract claim. *See Twin City Fire Ins. Co. v. Colonial Life & Accident Ins. Co.*, 839 So.2d 614 (Ala. 2002). The Court wrote that "whenever an insurer defends the insured under a reservation of rights, the enhanced duty of good faith is read into that reservation of rights." *Id.* at 616. "Because the enhanced duty arises from the contract, it follows that claims alleging a breach of the enhanced duty of good faith are contract claims." *Id.*

2. Brady's claim: Brady alleges that Evanston breached its enhanced duty of good faith by (1) failing to inform her or her attorney about policy exclusions or that they undertook the defense of Brady under a reservation of rights and (2) failing to consult Brady before offers on her behalf were extended or before offers of settlement from Gartman were rejected. (Doc. 7, ¶ 17). Brady

8

contends that "Evanston took control of the defense by retaining Labella Alvis to represent Brady in addition to the other QCHC . . . defendants." (Doc. 7, ¶ 15). Because Evanston controlled Attorney Alvis, Brady alleges that she was not given an opportunity to (1) demand settlement within policy limits; (2) offer some amount from her personal resources to settle the case; or (3) retain an attorney of her own choosing. (Doc. 7, ¶ 17).

Evanston argues that the enhanced duty of good faith does not apply "because Evanston permitted QCHC to select its own counsel to defend it and its employees." (Doc. 11 at 6). Evanston bases this argument on *Aetna Cas. & Sur. Co. v. Mitchell Bros. Inc.*, 814 So.2d 191 (Ala. 2001), a case in which the Alabama Supreme Court determined the enhanced duties did not apply when "the insured used its own selected counsel." (Doc. 11 at 6). Evanston argues that because it allowed QCHC to "select its own counsel to defend it and its employees," *Aetna* should apply. (Doc. 11 at 6).

But *Aetna* turned on who *controlled* the litigation, not who chose the lawyer: "MBI and Mitchell accepted defense of the *Lowman* suit under reservation of rights, **but never relinquished control of the lawsuit**, including settlement negotiations, to Aetna. Under such circumstances, we hold that Aetna did not have an 'enhanced obligation of good faith' to its insureds." *Id.* at 196 (emphasis added). As the *Aetna* court noted, earlier cases also turned on control: "The result in *Shelby Steel* was equitable. U.S.F. & G. was in a position of authority when it extended a defense to Shelby Steel under reservation of rights, **gaining 'exclusive control over Shelby Steel's defense.'** Shelby Steel agreed to accept that defense and relied upon U.S.F. & G. to protect Shelby Steel's interests. However, because U.S.F. & G. did not keep Shelby Steel advised as to the status of the lawsuit, U.S.F. & G. was estopped to deny coverage." *Id.* (emphasis added) (discussing *Shelby Steel Fab., Inc. v. United States Fidelity & Guar. Ins. Co.*, 569 So.2d 309 (Ala. 1990)).

Control is generally a fact question. In Count I of her counterclaim, Brady alleges that "Evanston took control of the defense by retaining Labella Alvis to represents Brady in addition to the other QCHC, Inc. defendants." (Doc. 7, ¶ 15). In the next paragraph, Brady alleges that Alvis was "Evanston's chosen attorney." (Doc. 7, ¶ 16). If Brady can prove that Evanston controlled

9

the defense through Attorney Alvis—and the court must assume she can at the Rule 12 stage—then Brady can show that Evanston had an enhanced duty of good faith.[1] And Brady pleads sufficient facts that, if proved true, would establish a breach of that enhanced duty. So the court **DENIES** Evanston's motion to dismiss Count I.

### 2. Count II: Bad Faith Refusal.

The court will dismiss Count II with prejudice because Brady cannot plead facts that, if proved true, will establish that Evanston acted in bad faith when it read the Policy to exclude payment of attorney's fees.

1. <u>Fairly debatable interpretation</u>: To state a claim for bad faith, an insured must establish:

1. An insurance contract between the parties and a breach thereof by the defendant;
2. An intentional refusal to pay the insured's claim;
3. The absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
4. The insurer's actual knowledge of the absence of any legitimate or arguable reason;
5. If the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.

*Nat'l Sec. Fire & Cas. Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982). Brady cannot establish the third element because Evanston's reading of the Policy to exclude Gartman's attorney's fees, even if ultimately held to be incorrect, was a "reasonably legitimate or arguable" reading of the Policy. *Id.*

---

[1] Earlier paragraphs of the Complaint seem to give control of the attorney hire and defense to QCHC, not Evanston. *See, e.g.*, (Doc. 7, ¶¶ 8) ("Upon information and belief, Evanston allowed QCHC, Inc. to choose its own counsel for the defense of the underlying suit."). Because this is a Rule 12 motion, the court gives Brady (the non-moving party) the benefit of the doubt. Discovery will clear up which party *actually* controlled the defense.

To establish "no lawful basis" for refusing to pay a claim, Brady must show that Evanston lacked any legitimate or arguable reason for not paying the claim. *See id.* at 185. No lawful basis "means that the insurer lacks a legitimate or arguable reason for failing to pay the claim." *See Gulf Atl. Life Ins. Co. v. Barnes*, 405 So.2d 916, 924 (Ala. 1981). When a claim is "fairly debatable," the insurer can debate it, whether the debate concerns a matter of fact or law. *Id.*

According to the Policy, "Damages means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include: . . . attorneys' fees of a party other than an Insured . . . ." (Doc. 1-1 at 16). The court is mindful that interpreting this provision is the ultimate issue in Evanston's declaratory judgment complaint, (doc. 1). So to be clear, the court does not decide the issue here. But the court can say—and does definitively say—that Evanston's reading of the exclusion provision is at least fairly debatable. A reasonable insurer and a reasonable insured could both interpret the phrase "Damages shall not include . . . attorneys' fees of a party other than an Insured" to preclude Gartman's attorneys' fees because Gartman was "a party other than an Insured." (*See* Doc. 1-1 at 16). Brady has not, and cannot, plead facts that would disprove the "fairly debatable" nature of this reading.

2. <u>Estoppel</u>: Brady argues that Evanston is estopped from relying on its reading of the Policy's exclusions as a basis for denying indemnification. But Brady cannot establish a waiver or estoppel theory: "The doctrine of waiver . . . is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom." *Home Indem. Co. v. Reed Equip. Co.*, 381 So. 2d 45, 50-51 (Ala. 1980). Whether there is a duty to disclose is a question of law. *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). Brady did not properly plead any such duty, nor can one be found at law. "[C]overage under an insurance policy cannot be created or enlarged by waiver or estoppel." *Zurich Am. Ins. Co. v. Specialty Foundry Prod.*, No. 7:08–cv–01412–LSC, 2009 WL 8612395, at *5-6 (N.D. Ala. July 30, 2009).

—

In short, Evanston can rely on the Policy exclusions to defeat a bad-faith refusal claim if that reading is at least fairly debatable. And Evanston's

reading of the exclusionary language is at least fairly debatable. So Brady can plead no facts that would prove a bad-faith refusal; therefore, the court will dismiss Count II with prejudice.[2]

### 3. Count III: Fraud by suppression.

Count III makes a claim for fraud by suppression. (*See* Doc. 7, ¶ 20). Fraud by suppression claims are governed by Ala. Code § 6-5-102: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." And fraud by suppression claims are subject to Rule 9(b)'s heightened pleading requirements. *See* Ala. Code § 6-5-102 (1975).

Brady pleads that "Evanston had a duty to disclose to Brady the coverage exclusions in the policy when they undertook her defense under the contract of insurance[.]" (Doc. 7, ¶20). The court agrees with Evanston that, under Alabama law, the contractual relationship between Evanston and Brady alone did not create the requisite confidential relationship that created a duty to disclose. *See Hardy v. BlueCross BlueShield*, 585 So.2d 29, 32-33 (Ala. 1991). But Brady also pleads that Evanston retained Attorney Alvis and that Alvis told Brady, by letter, that "as long as you are cooperative with your defense, the carrier will pay for your attorney fees as well as any settlement and/or judgment which might be later rendered in the case." (Doc. 7, ¶ 9). Brady might be able to establish the requisite duty via the "particular circumstances of the case," Ala. Code § 6-5-102, *if* she can prove that Attorney Alvis was speaking for Evanston when Alvis told Brady that Evanston would cover any judgment as long as Brady cooperated. So the court finds that Brady's pleading of a duty survives Rule 9 and 12 scrutiny.

Evanston also argues that Brady fails to adequately allege reasonable reliance on Evanston's silence. (*See* Doc. 11 at 11). But even if reasonable reliance matters to a suppression claim, Brady pleads facts that (in a light most

---

[2] Alternatively, the court could dismiss Count II without prejudice for failing to meet Rule 9(b)'s enhanced pleading requirements. But the court's finding that Brady cannot plead any set of facts to prove Count II obviates the need to explain this point further.

favorable to Brady) would show that Attorney Alvis wrongly told her that the entire judgment—including attorney's fees—would be covered if she lost. A jury might find it reasonable for Brady to rely on Alvis's assurance and thus not ask Evanston to confirm the extent of its coverage of a negative judgment.

So the court will allow Count III to proceed to discovery.

### B. QCHC's Motion to Dismiss Brady's Third-Party Complaint

QCHC moves to dismiss each count asserted in Brady's Amended Third-Party Complaint for failure to state a claim under Rule 12(b)(6). (Doc. 40). The court addresses each count in turn.

#### 1. Count I: Fraud by suppression.

Count I pleads a fraud by suppression claim; specifically, that QCHC failed to tell Brady that Evanston took on Brady's defense under a reservation of rights. (Doc. 29, ¶16).

Again, fraud by suppression claims are subject to Rule 9(b)'s heightened pleading requirements. *See* Ala. Code § 6-5-102 (1975) ("Suppression of a material fact which the party is under an obligation to communicate constitutes fraud."). Brady fails to plead with specificity the basis of QCHC's duty to tell Brady that Evanston would defend Brady but may not pay certain damage awards. Brady pleads that "QCHC was under an obligation, either by contract or by nature of its relationship with Brady" to tell Brady about the reservation of rights letter. (Doc. 29, ¶ 16). But Brady also pleads that QCHC did not employ Brady at the time of the alleged suppression—thus making their relationship co-defendants/co-insureds—and Brady fails to identify a contemporaneous contract between QCHC and Brady that would create the obligation that QCHC disclose Evanston's reserved rights to its co-defendant. (*See* Doc. 29, ¶ 11). Without more facts, Brady cannot sufficiently prove the "confidential relations of the parties or . . . the particular circumstances of the case" that created QCHC's duty to tell Brady about Evanston's reservation. *See also Freightliner, L.L.C. v. Whatley Cont. Carriers, L.L.C.*, 932 So. 2d 883, 891 (Ala. 2005); *see also Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 (Ala. 1995).

13

But perhaps Brady could allege sufficient facts to meet Rule 9(b) in an amended complaint. So the court grants QCHC's motion to dismiss Count I, without prejudice, so Brady can amend her Complaint.

### 2. Count II: Negligence/Wantonness.

Brady next alleges that QCHC either negligently or wantonly failed to forward Evanston's reservation of rights letter to Brady. (Doc. 10, ¶ 18). The parties dispute the duty element of negligence and whether wantonness—"[c]onduct which is carried on with a reckless or conscious disregard of the rights . . . of others"—applies. *See Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992) (negligence); Ala. Code § 6- 11-20(b)(4) (wantonness).

1. <u>Negligence</u>: Brady alleges that the Policy required QCHC to forward a copy of Evanston's reservation of rights letter to Brady, but QCHC negligently failed to do so. (Doc. 29, ¶ 18). But Brady fails to allege facts that create a duty that can support a negligence claim. Although "[i]t is possible for a tort to arise in Alabama out of a breach of a duty implied by or arising out of a contract, . . . an ordinary breach of contract will not give rise to a tort." *Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1371 (11th Cir. 1983). Indeed, "a negligent failure to perform a contract . . . is but a breach of the contract." *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (Ala. 1956). As pleaded, Brady's claim hinges on a contract creating the duty and a breach of contract creating the breach of duty. Because Alabama law does not recognize simple breach of contract to support a negligence claim, the court must dismiss Brady's negligence claim as presently pleaded.

2. <u>Wantoness</u>: For wantonness, Brady fails to allege any facts about QCHC's state of mind. Because negligence is the "inadvertent omission of duty," and wantonness is about the "state of mind with which the act or omission is done," *Ex parte Essary*, 992 So.2d 5, 9 (Ala. 2007), the Alabama Supreme Court has explained: "Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Tolbert v. Tolbert,* 903 So.2d 103, 114 (Ala. 2004) (internal citations omitted); *see also*

*Jinright v. Werner Enterprises, Inc.*, 607 F. Supp. 2d 1274, 1275–76 (M.D. Ala. 2009).

—

To sum up, Brady fails to plead facts that would establish negligence or wantonness under Alabama law. But it is possible that she could plead the requisite facts for one or both theories in an amended complaint. So the court will dismiss Count II without prejudice to allow Brady to amend.

## CONCLUSION

For these reasons, the court **DENIES** Evanston's Motion to Dismiss Count I and Count III of Brady's Counterclaims and **GRANTS** Evanston's Motion to Dismiss Count II <u>with</u> prejudice. (Doc. 11). The court **GRANTS** QCHC's Motion to Dismiss Count I and Count II of Brady's Amended Third-Party Complaint and dismisses those counts <u>without</u> prejudice.

If Brady chooses to amend her Complaints, she should file *one* amended complaint that pleads the factual allegations and counts against both parties. Brady must file such a consolidated amended complaint on or before **March 25, 2024**.

**DONE** and **ORDERED** on March 4, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE